UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSUE RUBEN REYES BLANCA,

Petitioner,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, et al.,

Respondents.

CASE NO. 2:26-cv-02487-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Josue Ruben Reyes Blanca's petition for writ of habeas corpus (Dkt. No. 13) (redacted). Having considered the petition, Respondents' return (Dkt. No. 9), Petitioner's reply (Dkt. No. 12), and the relevant record, the Court GRANTS the petition.

//

//

//

# I. BACKGROUND

## A. Parties

Petitioner is Josue Ruben Reyes Blanca, a citizen and national of Venezuela. Dkt. No. 13 ¶ 35. Petitioner is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* ¶ 36.

Respondents[1] are Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); Todd M. Lyons, Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement ("ICE"); Seattle Field Office Director, ICE Enforcement and Removal ("ERO") Operations; and Facility Administrator/Warden of NWIPC. *See id.* ¶¶ 31–34.

## B. Petitioner's Immigration History[2]

### 1. First Removal Proceeding

On or about March 11, 2022, Petitioner entered the United States near Eagle Pass, Texas, without inspection. Dkt. No. 10 (Arambula Decl.) ¶ 3; *see* Dkt. No. 11-1 (Notice to Appear ("NTA")) at 2. He was apprehended by agents of the United States Border Patrol ("USBP") and issued an NTA. Dkt. No. 10 ¶¶ 3–4. On March 16, 2022, USBP released Petitioner on an order for release on recognizance ("OREC"). *Id.* ¶ 5; Dkt. No. 11-3 (Form I-213) at 3.

On April 25, 2022, ERO issued Petitioner a superseding NTA, which charged Petitioner with violation of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. No. 10 ¶ 6; Dkt. No. 11-1.

---

[1] As used in this Order, "Respondents" does not include Respondent "Facility Administrator/Warden," who has not appeared in this matter.

[2] Many of the facts recounted here are based on hearsay contained within narrative portions of documents from Petitioner's immigration record, or on the declaration of Deportation Officer Gabriel Arambula, who does not claim to have firsthand personal knowledge of most of the facts therein (*see* Dkt. No. 10 (Arambula Decl.) ¶ 2). The Court makes no findings as to whether these are true and correct statements of fact.

On July 25, 2024, DHS granted Petitioner Temporary Protected Status ("TPS") under Section 244 of the INA, 8 U.S.C. § 1254a. *See* Dkt. No. 13 at 65–66 (TPS Notice of Action). Petitioner's TPS afforded him "protection from removal (or deportation), employment authorization in the United States, and the opportunity to apply for travel authorization." *Id.* at 65. Petitioner's TPS was valid between July 25, 2024, and April 2, 2025. *Id.*

On September 4, 2024, an immigration judge ("IJ") dismissed Petitioner's removal proceedings without prejudice. Dkt. No. 11-2 (Order on Motion to Dismiss) at 2.

#### 2. Second Removal Proceeding

On June 25, 2026, ICE took Petitioner into custody while conducting field operations in Power County, Idaho. Dkt. No. 10 ¶ 10; Dkt. No. 11-3 at 3. ICE detained Petitioner at a local jail. Dkt. No. 10 ¶ 10. On June 27, 2026, ICE served Petitioner with a new NTA, charging him with violation of Section 212(a)(6)(A)(i) and (a)(7)(A)(i)(I) of the INA. *Id.* ¶ 11; Dkt. No. 11-5 (NTA) at 2, 5. This arrest "initiated new removal proceedings." Dkt. No. 9 at 2. On June 30, 2026, Petitioner was transferred to NWIPC, where he remains incarcerated. Dkt. No. 10 ¶ 12.

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

### A. Statutory Authority for Petitioner's Detention

Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), because he "is an applicant for admission [who] has never been admitted to the

United States." Dkt. No. 9 at 4. Respondents rely on out-of-circuit authority to substantiate their position. *See id.* at 4, 5 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1135–36 (8th Cir. 2026).

One day after Respondents filed their return brief, the Ninth Circuit decided *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026). *Rodriguez Vazquez*, which is binding authority on this Court, held that "unadmitted [noncitizens] present in the interior of the country" are subject to 8 U.S.C. § 1226, not 8 U.S.C. § 1225(b)(2)(A). *Id.* at *26. Consequently, the INA does not mandate their detention during removal proceedings. In short, Respondents' interpretation of the INA (*see* Dkt. No. 9 at 4–6) is contrary to binding precedent and, therefore, the Court rejects it.

**B. Petitioner's Detention Violates the INA**

Here, when Petitioner was detained on June 25, 2026, he was encountered in Power County, Idaho (*see* Dkt. No. 10 ¶ 10)—i.e., within "the interior of the country"—and not at the border. *See Jacobo-Ramirez v. Mullin*, No. C25-2136, 2026 WL 879799, at *1 (D. Nev. Mar. 30, 2026) (contrasting arrests made "in the interior of the country" with those made "at its borders"). Pursuant to *Rodriguez Vazquez*, Petitioner is therefore properly considered to be detained under the authority of Section 1226. Under such circumstances, Petitioner's mandatory detention violates the INA. *See, e.g.*, *Castulo-Cerro v. Hermosillo*, No. C26-437, 2026 WL 395324, at *2 (W.D. Wash. Feb. 12, 2026). Courts in this District have concluded—and Respondents concede as much—that "[i]n cases where a petitioner was detained without receiving a hearing, . . . the appropriate remedy is to order a bond hearing in compliance with 8 U.S.C. § 1226(a)." *Carchi Mingo v. ICE Field Off. Dir.*, No. C26-1902, 2026 WL 1998582, at *1 (W.D. Wash. July 10, 2026); *see* Dkt. No. 9 at 9.

District courts in this Circuit frequently order immigration judges, when considering noncitizens in removal proceedings for release on bond, to require the government to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See Roberts v. Scott*, No. C26-1333, 2026 WL 2071146, at *6 (W.D. Wash. July 17, 2026) (collecting cases). This "burden-shifting framework" derives from *Singh v. Holder*, in which the Ninth Circuit held that that standard applied in bond hearings for individuals subject to prolonged detention under 8 U.S.C. § 1226(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011)). Although aspects of *Singh* have been abrogated or called into question by subsequent Supreme Court decisions, *see id.*, its burden-shifting framework continues to be extensively applied, and the case is still discussed as precedential by the Ninth Circuit. *See, e.g.*, *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024).[3]

**C. Additional Grounds For Relief**

**1. Fifth Amendment**

"To the extent that Petitioner raises alternative arguments regarding his detention based on alleged constitutional violations, under the doctrine of constitutional avoidance, the Court need not reach these claims." *Pacas Gomez v. Scott*, No. C26-2363, 2026 WL 2186159, at *2 (W.D. Wash. July 29, 2026) (citing *Green v. Miss United States of Am., LLC*, 53 F.4th 773, 795 (9th Cir. 2022)); *see* Dkt. No. 13 ¶¶ 103–119 (alleging due process violations). Here, were the Court to find that Petitioner's detention violated due process, the Court would order the same

[3] Although *Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), assigns a noncitizen seeking bond the burden of persuading a judge that their release is justified, that decision does not resolve the question of burden, because a decision of a Court of Appeals takes precedence, within the relevant circuit, over a competing opinion of the BIA—as the BIA itself has affirmed and reaffirmed. *See K-S-*, 20 I. & N. Dec. 715, 719–20 (BIA 1993) (citing, *inter alia*, *NLRB v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74 (9th Cir. 1987) (discussing "a federal agency's obligation to follow the law of a circuit court"); *Anselmo*, 20 I. & N. Dec. 25, 31 (BIA 1989)).

relief—i.e., an individualized bond hearing before an IJ—that it does here. *See Pacas Gomez*, 2026 WL 2186159, at *2.

**2. Administrative Procedure Act ("APA")**

Petitioner alleges that his detention constitutes unlawful agency action under Section 706 of the APA. *See* Dkt. No. 13 ¶¶ 120–129. Although the Court finds that Respondents paint the issue with too broad of a brush where they contend that "APA relief is jurisdictionally unavailable here" (Dkt. No. 9 at 9), the Court also finds that Petitioner's APA-based claim for relief is not sufficiently developed to allow for a complete and thorough review here. *Cf. Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1106–09 (C.D. Cal. 2025) (concluding, after a thorough review of the record and discussion of applicable law, that "[p]etitioners' APA and habeas claims must be permitted to coexist because they reach separate issues, and request distinct relief, despite relying on the same underlying premise that the DHS Policy is unlawful"). In any event, because the Court can resolve the instant petition without considering Petitioner's APA claim, the Court will—as Petitioner requests—"set aside that claim without prejudice and proceed to adjudicate that habeas and constitutional claims." Dkt. No. 12 ¶ 48.

**3. Fourth Amendment**

Petitioner alleges that his detention is unlawful, because he was "seiz[ed] without lawful authority, valid warrant, or constitutionally sufficient cause," in violation of the Fourth Amendment. Dkt. No. 13 ¶ 135. Petitioner seeks "release or other appropriate relief consistent with the Constitution and laws of the United States." *Id.* ¶ 139. The Court adopts the approach of other courts in this District, which have declined to release immigration detainees on the basis that their arrest violated the Fourth Amendment. "[T]he remedy for an unlawful arrest under the Fourth Amendment in the immigration habeas context is 'suppression of evidence, not release from custody.'" *Monroy v. Mullin*, No. C26-2427, 2026 WL 2389536, at *1 (W.D. Wash. Aug.

17, 2026) (quoting *Reyes v. Hermosilla*, No. C25-2525, 2026 WL 528692, at *2 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, 2026 WL 52513 (Feb. 25, 2026)); *see also Rojas Sosa v. Hernandez*, No. C26-1706, 2026 WL 1871891, at *2 (W.D. Wash. June 30, 2026) (finding that petitioner's Fourth Amendment claim "is not cognizable in a habeas petition," but still granting habeas relief because petitioner's "mandatory detention under § 1225(b) violates the INA").

## IV. CONCLUSION

Therefore, Petitioner's petition for writ of habeas corpus (Dkt. No. 13) is GRANTED. It is hereby ORDERED:

(1) Within fourteen (14) days of this Order, Respondents shall provide Petitioner with a constitutionally adequate bond hearing under 8 U.S.C. § 1226(a).

(a) The bond hearing SHALL comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—i.e., there must be a contemporaneous record of the hearing, and Respondents bear the burden of proving by clear and convincing evidence that Petitioner is either a flight risk or a danger to the community.

(b) The immigration judge SHALL allow Petitioner to present evidence of financial circumstances or alternative conditions of release that would mitigate any potential dangerousness or risk of flight.

(2) If the individualized bond hearing is not conducted within fourteen (14) days of this Order, Petitioner SHALL be immediately released under appropriate conditions of release.

(3) **Within twenty-four (24) hours** of the bond hearing or release, Respondents SHALL file a status report confirming compliance with this Order. Alternatively, the report SHALL detail the date and time of Petitioner's release from custody.

Dated this 27th day of August 2026

Tana Lin
United States District Judge